**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Donald Angelo CLARK, Defendant-Appellant.**

**No. 83CA0993.**

Colorado Court of Appeals, Div. II.

April 18, 1985.

Rehearing Denied May 30, 1985.

Certiorari Denied Sept. 30, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David Vela, Colorado State Public Defender, Richard Hostetler, Special Deputy Public Defender, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, Donald Angelo Clark, appeals from a judgment of conviction entered on a jury verdict of guilty of second degree burglary, robbery of the elderly, and theft over $200. We affirm.

The first trial of this case ended in a mistrial declared on the court's own motion when problems arose concerning fingerprint evidence. Also, as a sanction against the prosecution for violating the court's discovery order, the court ordered that no fingerprint evidence could be introduced at the retrial.

The prosecution filed an original proceeding in our supreme court, asking it to vacate the trial court's order excluding the fingerprint evidence. Holding that there was no showing of an abuse of discretion in the exclusionary order, the court discharged the rule to show cause. *People v. District Court*, 664 P.2d 247 (Colo.1983).

Before the retrial, the trial court modified its sanction and ruled that the prosecution could use the fingerprint evidence for impeachment purposes if defendant testified. Defendant did not testify, so this evidence was not offered or used.

## I.

■ Defendant first contends that the trial court erred in denying his motion to bar retrial based on the double jeopardy provisions of the U.S. and Colorado constitutions. We do not agree.

Defendant did not formally object at the first trial to the court's declaration of mistrial. However, it appears that defendant would have objected except for his reliance on the trial court's announcement of the sanctions he would impose on the prosecution at the second trial. Therefore, we will proceed on the basis that defendant did not waive any objection.

Accordingly, the standard of review is whether there was, as found by the trial court, "manifest necessity" to support the declaration of a mistrial. *See People v. Castro*, 657 P.2d 932 (Colo.1983); *People v. Baca*, 193 Colo. 9, 562 P.2d 411 (1977). If the mistrial was substantially justified by manifest necessity, any objection by the defendant is irrelevant and double jeopardy would not attach to bar retrial. *See People v. Baca, supra; People v. Moore*, 701 P.2d 1249 (Colo.App.1985).

This standard was originally declared in *United States v. Perez*, 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165 (1824), in which the court stated that "the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject ...." As stated in *People v. Castro, supra:* "Manifest necessity encompasses those situations, substantial and real, that interfere with or retard 'the administration of honest, fair, even-handed justice to either, both, or any, of the parties to the proceeding.'"

■ The record supports the propriety of the trial court's mistrial declaration. As described in *People v. District Court, supra*, through opening statements of both counsel and testimony of numerous witnesses, the jury had been fully advised that a fingerprint found in the victim's home was that of the defendant. Then, because of lack of foundation, the key fingerprint evidence could not be admitted.

Confronted with these circumstances, the trial court, in determining the appropriate remedy, stated:

"The obvious suggestion might be to advise the jury and admonish them not to take into consideration anything that was said about fingerpirnts.... [However], I don't think an admonishment at this point would unring the bell for the jury, given the fact that fingerprint testimony is considered by most lay people to be of such significance.... There is further testimony concerning the fact that the defendant has on record fingerprints with the Denver Police Department, a very clear inference of prior criminality. The court feels that it is in a position that it must find because of these extreme circumstances the need for a mistrial. The court does not find any bad faith on the part of the prosecution in presentation of the case so as to give rise to an argument that double jeopardy would attach. The court finds then that there is a manifest necessity, given the fact that the jury has just been given so much information during the course of the trial that now is not proper evidence that the court cannot conceive that the jury could follow an instruction to disregard, and the court finds that the manifest necessity rules in *People v. Baca* ... apply ...."

■ Similarly, we reject defendant's claim that bad faith and overreaching on the part of the prosecution barred his retrial. The trial court found that there was no bad faith. The record supports that finding, and also establishes that there was no misconduct or overreaching on anyone's part and no attempt to trigger a mistrial.

## II.

Defendant next claims that the trial court abused its discretion in modifying its discovery sanction ordered at the time of

the first trial and that its ruling *in limine* that the fingerprint evidence could be used for purposes of impeachment violated defendant's right to due process. We disagree.

The trial court modified its discovery sanction against the prosecutor from total suppression of the fingerprint evidence to allowing the prosecutor to use the evidence for purposes of impeachment if the defendant took the stand. The court stated it modified the sanction in order to preserve the "truth finding" process.

A trial court has broad discretion in ordering and fashioning a sanction for violation of a discovery order. *See* Crim. P. 16(f); *People v. District Court, supra.* We find no abuse of that discretion in the modification.

Also, the fingerprint evidence was not introduced either in the People's case-in-chief or for impeachment. Since defendant did not testify, the trial court's *in limine* ruling that it would allow use of the fingerprint evidence for impeachment purposes is not reviewable on appeal. *See Luce v. United States,* — U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 19 (1984).

### III.

At trial, the prosecutor presented witnesses who testified that during the period when the offenses occurred, defendant was a resident of a "halfway house," that he was checked out of the halfway house when the crimes at issue were committed, that he told his roommate that he had committed the crimes, and that some of the victim's property was found on defendant by staff of the halfway house.

In admitting this testimony, the trial court rejected defendant's claim that this evidence was unduly prejudicial in that it imparted a criminal past to him. It found that the probative value of such testimony outweighed any prejudice to defendant. *See* CRE 403.

Defendant contends admitting this testimony was error. We do not agree.

Defendant's activities at the halfway house were relevant and probative to the issue of the defendant's guilt or innocence. The testimony did not directly indicate that defendant had a criminal past, and the jury was not told what type of halfway house this was. Furthermore, the trial court twice advised the jury that the evidence as to a halfway house was to be considered only in connection with whether defendant had committed the offense charged. *See People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979).

Judgment affirmed.

BERMAN and KELLY, JJ., concur.