**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Raul Osvaldo AGUIRRE, Defendant–Appellant.**

**No. 90CA1087.**

Colorado Court of Appeals, Div. V.

March 12, 1992.

Rehearing Denied April 30, 1992.

Certiorari Denied Oct. 26, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge ROTHENBERG.

Defendant, Raul Osvaldo Aguirre, appeals the judgment of conviction entered upon jury verdicts finding him guilty of sale of a controlled substance and conspiracy to sell controlled substances. We affirm.

## I.

■ Defendant first contends that the trial court abused its discretion in denying his challenge for cause as to one juror. However, even if we assume, *arguendo*, that this juror should have been excused, the defense did not exhaust its peremptory challenges and, therefore, has not shown prejudice from the court's ruling. *See People v. O'Neill*, 803 P.2d 164 (Colo.1990). *See also People v. Silvola*, 190 Colo. 363, 547 P.2d 1283, *cert. denied*, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976) (question of abuse of discretion not reached unless defendant can show: (1) he exercised all of his peremptory challenges, and (2) he was denied the right to challenge other prospective jurors because he was forced to exhaust his peremptory challenges to excuse the earlier suspect juror).

## II.

■ Defendant next contends that the trial court erred in denying his motion to suppress identification by a Grand Junction police detective. We disagree.

■ An out-of-court identification procedure is impermissibly suggestive if there is a substantial likelihood of misidentification based upon the totality of the circumstances. *People v. Roybal*, 775 P.2d 67 (Colo.App.1989). Some of the factors to be considered in evaluating these circumstances are: the witness' opportunity to view the criminal; the witness' degree of attention; the accuracy of any prior description; the witness' level of certainty; and the time elapsed since the crime. *People v. Borrego*, 668 P.2d 21 (Colo.App. 1983).

At the hearing, the detective testified that he had previously attended various classes on surveillance. Thus, he was a trained observer, and the trial court found he was "more skilled than average in terms of observations and memories of observations." *See People v. Thiery*, 780 P.2d 8 (Colo.App.1989) (trial court did not err in allowing identification by an experienced and "highly attentive" police officer who initially viewed criminal for 30 seconds during daylight hours from a distance of 4 feet).

Further, the trial court found that the detective had a "significant opportunity" to view the driver of the van, "a high degree of attention," and a "full frontal facial view." Finally, the court found that the detective also had an independent basis for his recollection and his in-court identification in that the identification was based "on his memory of the driver, not on the photograph."

■ There is ample record support for the court's findings. Thus, even if we assume, *arguendo*, that the photo display was unduly suggestive, there was an independent basis for the witness' testimony, and the identification made was shown to have sufficient indicia of reliability. *See People v. Weller*, 679 P.2d 1077 (Colo.1984).

## III.

We also reject defendant's contention that the trial court erred in admitting a witness' out-of-court statements to a police officer following her arrest.

The witness in question was arrested after she was seen delivering drugs received from defendant, and after her arrest, she made statements to a police officer which implicated herself and the defendant. In exchange for certain concessions, she agreed to testify for the prosecution, and at defendant's trial, she was called by the prosecution as a witness.

After exercising her Fifth Amendment privilege and receiving use immunity, she testified. However, during both her direct examination and on cross-examination, she denied or could not recall defendant's involvement in the drug transaction. The prosecution then called the officer that had interviewed her. The officer testified that,

following her arrest, the witness had made a number of statements implicating the defendant.

## A.

■ Initially, defendant objected to the admission of the witness' statements on the grounds that her statements to the police were involuntarily made. However, the trial court ruled that defendant lacked standing to contest the admissibility of the witness' statements on voluntariness grounds. We find no error in that ruling.

In *United States v. Scallion*, 533 F.2d 903 (5th Cir.1976), the court stated:

[T]he privilege against self-incrimination is a personal right that cannot be claimed by third parties.... It is well settled that Fourth Amendment rights cannot be claimed by third parties, and we see no reason why the principle should not apply here to ... Fifth Amendment rights.

*See also United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (Fifth Amendment privilege against compulsory self-incrimination is personal to defendant and does not extend to testimony or statements of third parties called as witnesses); *United States v. Fortna*, 796 F.2d 724 (5th Cir.1986) (Fifth Amendment rights are personal in nature and cannot be asserted vicariously). *Cf. Jefferson County Department of Social Services v. Colorado State Department of Institutions*, 784 P.2d 805 (Colo.App.1989) (a person does not have standing to assert the constitutional rights of another).

We agree with this rationale. Hence, even if we assume that the witness' Fifth and Sixth Amendment rights *were* violated, they were her personal rights and could not be claimed by defendant in his motion to suppress. Further, here, defendant had an ample opportunity at trial to cross-examine the witness and other witnesses, and he was thus able to present to the jury any circumstances in support of his theory that the witness' statements were involuntary.

## B.

Defendant also contends that the trial court erred in admitting the witness' statements to the police officer following her arrest because her statements were not made in furtherance of a conspiracy.

■ Before trial, the prosecuting attorney, relying on CRE 801(d)(2)(E), filed a motion in limine requesting the admission of some of the witness' statements as being those of a co-conspirator made in furtherance of the conspiracy. The court permitted the prosecutrix to introduce the witness' statements before there was independent evidence of the conspiracy, and during the witness' testimony, the prosecutrix introduced taped conversations between the witness and other conspirators. We find no error in this procedure. *See People v. Gable*, 647 P.2d 246 (Colo.App.1982).

■ However, in this appeal, the People concede that the witness' statements to the interviewing officer made following her arrest were not made in furtherance of a conspiracy and were therefore not admissible under CRE 801(d)(2)(E). Rather, the People contend that her statements to the officer were properly admitted as prior inconsistent statements under § 16–10–201, C.R.S. (1986 Repl.Vol. 8A). We agree with the People's contention.

During the witness' testimony, she either denied or could not recall any participation by defendant in the alleged drug transaction. Thereafter, the prosecuting attorney laid a proper foundation under § 16–10–201(1)(a), C.R.S. (1986 Repl.Vol. 8A) by calling the witness' attention to her earlier contradictory statements to the interviewing officer. Thus, we find no error in the trial court's ruling allowing evidence of the witness' prior inconsistent statements to the officer. *See People v. Madril*, 746 P.2d 1329 (Colo.1987).

Nor do we deem it significant that our reasoning may differ from that of the trial court since the judgment was correct in result. *See People v. Cerrone*, 780 P.2d 562 (Colo.App.1989).

## C.

■ Finally, we reject defendant's contention that the witness should be treated

as an "unavailable witness" under the criteria of *People v. Drake*, 785 P.2d 1253 (Colo.1989). Under CRE 804, "unavailability as a witness" includes, *inter alia*, a witness who: (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of his statement.

Here, the record reflects that the witness testified extensively, although her memory was selective. And, to the extent that she claimed a lack of memory, her testimony benefitted the defendant with whom she admitted having had a close personal relationship. We therefore reject defendant's contention that the witness was "unavailable," *see People v. Oliver*, 745 P.2d 222 (Colo.1987), or that the defendant was effectively denied his constitutional right of confrontation. *Compare Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) (defendant was not denied right of confrontation where co-defendant took stand, denied making an alleged out-of-court statement implicating defendant, and proceeded to testify favorably to defendant concerning underlying facts) *with Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (defendant was denied confrontation by prosecution's use of co-defendant's statement implicating defendant where co-defendant was called as prosecution witness but refused to testify).

The judgment is affirmed.

PLANK and DAVIDSON, JJ., concur.